1

2

3

4

5 UNITED STATES DISTRICT COURT

6 EASTERN DISTRICT OF WASHINGTON

7 EDWIN TROY HAWKINS,

NO:  2:15-CV-0283-TOR

8                            Plaintiffs,

SECOND ORDER GRANTING
9          v.                               DEFENDANTS' MOTIONS TO
DISMISS
10 DOUGLAS COUNTY, a municipal
corporation, et al.,

11                            Defendants.

12

13          BEFORE THE COURT are Defendant Douglas County's 12(b) Motion to

14 Dismiss Amended Complaint (ECF No. 23) and Chelan County Defendants'

15 Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 24).  These

16 matters were submitted for consideration without oral argument.  The Court—

17 having reviewed the briefing, files, and record therein—is fully informed.

18 //

19 //

20 //

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 1

**BACKGROUND**

This action arises out of the underlying criminal conviction of Plaintiff Edwin Troy Hawkins.  In his First Amended Complaint, Hawkins asserts, pursuant to 42 U.S.C. § 1983, that Chelan and Douglas County entities and officers maliciously pursued charges and a conviction against him in violation of his Fourth and Fourteenth Amendment rights.  ECF No. 22.  Defendants previously moved to dismiss the other federal and state law claims in Hawkins' original Complaint, which motion this Court granted.  ECF No. 21 (finding all claims, save for his malicious prosecution claims,[1] barred by the statute of limitations).

In the instant motion, Defendants again move to dismiss.  ECF Nos. 23; 24.

**FACTS**

The following facts are drawn from the First Amended Complaint and accepted as true for the instant motion.[2]

---

[1] Hawkins First Amended Complaint does not reassert his state malicious prosecution claim.

[2] The Court declines Hawkins' request to take judicial notice of state court documents from the underlying criminal proceeding—a Washington Supreme Court decision, Hawkins' briefing in support of a new trial, and a witness

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 2

This action concerns the events leading up to and concerning Hawkins' underlying criminal conviction in state court. In short, Hawkins was charged with and convicted of first degree attempted possession of stolen property and first degree possession of stolen property, but the charges were ultimately dismissed in December 2014 after Hawkins successfully appealed and obtained a right to a new trial.

Hawkins is an orchardist in Eastern Washington. In early 2006, Bob Morrison, manager of Beebe River Orchard, offered to have Hawkins lease the orchard. Hawkins had several agents investigate the equipment on the orchard and ultimately declined the lease offer. As a result, Morrison and Charlie Myers, the orchard's irrigator, lost their full-time employment,

Later in the spring of 2006, Morrison reported to the Douglas County Sheriff's Office that two sprayers, a Kubota tractor, and a Landini tractor were missing. Morrison subsequently received a call from Len England, who said he knew where the missing sprayers were and had pictures but requested that Morrison not tell the police he had provided the information. Hawkins has a long-

declaration—for purposes of the instant motion to dismiss as they do not add to the allegations within the First Amended Complaint.

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 3

1  standing feud with his in-laws, including Len, Doug, and Dale England.[3]  Morrison

2  reported to the Douglas County Sherriff's Office that the missing equipment was

3  located on property Hawkins leased from Sandcastle Orchard.

4      Bill Black, an officer with the Douglas County Sheriff's Office visited

5  Sandcastle Orchard, along with Charlie Myers.  Although it is unclear when the

6  sprayers were found on Hawkins' property, Myers pointed out their location to the

7  Douglas County Sheriff's Office.

8      After answering Deputy Black's questions, Hawkins visited the neighbors of

9  Sandcastle Orchard, Don and Gloria Bailey.  Ms. Bailey told Hawkins that, several

10 days before the sprayers were found, she witnessed a blue Ford pickup—Morrison

11 drives a blue Ford Ranger—with a loaded trailer drive on to the Sandcastle

12 Orchard property and then drive away with an empty trailer.  Hawkins relayed this

13 information to Deputy Black, but Deputy Black declined to speak directly to the

14 Baileys.

15     In late October 2006, Deputy Randy Lake of the Chelan County Sheriff's

16 Office visited Hawkins' home and inspected Hawkins' farm equipment.  Deputy

17 Lake did not find any signs of the missing Kubota and Landini tractors.

18

19 [3] Dale England, a Chelan County Sheriff's Deputy, is named in this suit and

20 contributed to the investigation of the stolen farm equipment.

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 4

The day after this search, tools, equipment, and equipment records were stolen from one of Hawkins' shops.  Morrison was seen the day before the break-in driving past the shop numerous times, at a slow speed, while dressed in camouflage clothing.  Subsequently, based on a report by Morrison that the tractor was stolen, Chelan County Sheriff's Office took a Kubota weed spray tractor from Hawkins' orchard.

In the spring of 2007, a white flatbed truck arrived at one of Hawkins' orchards, carrying an orange Kubota tractor.  The driver unloaded the tractor and, a short time later, left the property with an orange Kubota tractor.

Subsequently, Hawkins brought his Kubota tractor to East Wenatchee for repair.  The mechanics noticed that the serial number on the tractor had been ground off and the identification plate was missing.  The mechanics determined that this Kubota tractor was one of the pieces of equipment previously reported missing and contacted the police.

Over a three day period in June 2007, Hawkins was arrested twice by the Douglas County Sheriff's Office, both times for possession of this Kubota tractor.

First, on June 8, 2007, Hawkins was arrested for possession of stolen property when he went to pick up the tractor from the mechanics.  The tractor remained at the repair shop.  After he was released on bail following his first arrest, Hawkins returned to the mechanic to pick up the tractor.  While driving home with

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 5

the tractor, Hawkins was pulled over by a Chelan County Sheriff's deputy who had been in communication with the Douglas County Sheriff's Office. There was confusion over whether this tractor was the missing tractor. Ultimately, deputies from both Douglas and Chelan County took pictures of the tractor and then helped Hawkins lock the tractor in his shed.

Second, on June 11, 2007, several Douglas and Chelan County deputies arrived at Hawkins' home and arrested him for possession of stolen property, the stolen property being the Kubota tractor Hawkins brought home three days earlier.

Hawkins was ultimately charged with four counts related to the stolen farm equipment: one count of first degree possession of stolen property for the sprayers; one count of first degree possession of stolen property for the Landini tractor[4]; one

---

[4] It is unclear, based on the allegations within the First Amended Complaint what led to this charge. In September 2007, Hawkins' employee was twice pulled over by a Douglas County Sheriff's deputy for transporting the allegedly stolen Landini tractor; although, it is unclear if this was the missing tractor. Deputy England was present for the second stop. Deputy England, along with Deputy Bo Allen, threatened one of Hawkins' employees with deportation if he did not tell them who stole the tractors.

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 6

count of first degree attempted possession of stolen property based on Hawkins' attempt to pick up the Kubota tractor from the mechanic; and one count of first degree possession of stolen property based on when Hawkins obtained possession of the Kubota tractor from the mechanic.

Hawkins was convicted on the two counts related to the Kubota tractor. Hawkins appealed the conviction, and while the appeal was pending, successfully moved the trial court for a new trial based on newly discovered evidence. The state appealed the trial court's grant of a new trial, and the Washington State Supreme Court ultimately ruled in Hawkins' favor.

On December 19, 2014, the Douglas County Superior Court entered a stipulated order of dismissal with prejudice as to the charges against Hawkins.

On September 16, 2015, Hawkins initiated the present action.

## DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(h)(2), a party may raise a Rule 12(b)(6) defense, after a responsive pleading has been filed, in a motion for judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)). That being said, a pre-answer motion made pursuant to 12(b)(6) and a post-answer motion to dismiss made under 12(c) are

1     "functionally identical," the actual difference merely being the time of filing.

2     *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Under

3     either provision, "[a] complaint should not be dismissed unless it appears beyond

4     doubt that that the plaintiff can prove no sets of facts in support of the claim that

5     would entitle it to relief."  *Berg v. Popham*, 412 F.3d 1122, 1125 (9th Cir. 2005)

6     (citation omitted).  To avoid dismissal, a plaintiff must allege "sufficient factual

7     matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

8     556 U.S. 662, 678 (2009).  This standard "does not require 'detailed factual

9     allegations,' but it demands more than an unadorned, the defendant-unlawfully-

10     harmed-me accusation."  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

11     544, 555 (2007)).  In conducting its review, the court "must accept the factual

12     allegations of the complaint as true and construe them in the light most favorable

13     to the plaintiff."  *AE ex rel Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th

14     Cir. 2012).

15     **B.  Malicious Prosecution**

16     To establish a section 1983 claim, a claimant must prove "(1) that a person

17     acting under color of state law committed the conduct at issue, and (2) that the

18     conduct deprived the claimant of some right, privilege, or immunity protected by

19     the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628,

20     632–33 (9th Cir. 1988).  "A person deprives another 'of a constitutional right,

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 8

1    within the meaning of section 1983, if he does an affirmative act, participates in

2    another's affirmative acts, or omits to perform an act which he is legally required to

3    do that 'causes' the deprivation of which the plaintiff complains.'"   *Id.* at 633

4    (brackets omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

5        Hawkins asserts that Defendants instituted or continued legal proceedings

6    against him with malice for the purpose of denying him his rights under the Fourth

7    and Fourteenth Amendment to the U.S. Constitution.  Defendants do not appear to

8    dispute that they were acting under color of state law; however, they do dispute

9    whether Hawkins has sufficiently alleged a constitutional violation.

10        "To maintain a § 1983 action for malicious prosecution, a plaintiff must

11    show that the defendants prosecuted her with malice and without probable cause,

12    and that they did so for the purpose of denying her a specific constitutional right."[5]

13    *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (internal quotation marks and

14

15    [5] "In general, a claim a malicious prosecution is not cognizable under § 1983 if

16    process is available within the state judicial systems to provide a remedy . . .";

17    however, "an exception exists when a malicious prosecution is conducted with the

18    intent to subject a person to a denial of constitutional rights." *Lacey v. Maricopa*

19    *County*, 693 F.3d 896, 919 (9th Cir. 2012) (en banc) (internal quotation marks and

20    alterations omitted).

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 9

brackets omitted).  The claim also "requires 'the institution of criminal proceedings against another who is not guilty of the offense charged' and that 'the proceedings have terminated in favor of the accused.'" *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (en banc) (quoting Restatement (Second) of Torts § 653 (1977)).  "A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others—including police officers and investigators—who wrongfully caused his prosecution."  *Smith*, 640 F.3d at 938.

### 1.  Municipal Entities

Defendants contend that Hawkins has failed to adequately plead municipal liability as he has provided no facts supporting even an inference that any conduct directed at Hawkins was pursuant to an official municipal policy.  ECF Nos. 23 at 5-6; 24 at 11-14.  Hawkins does not address this issue in his response briefing.

The Supreme Court has held that local governments are "persons" who may be subject to suits under § 1983.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).   However, a municipality may only be held liable for constitutional violations resulting from actions undertaken pursuant to an "official municipal policy."  *Id*. at 691.  As the Supreme Court articulated in *Monell*, the purpose of the "official municipal policy" requirement is to prevent municipalities from being held vicariously liable for unconstitutional acts of their employees under the doctrine of respondeat superior.  *Id.*; *see also Bd. of Cnty. Comm'rs  v. Brown*, 520

U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986). Thus, the "official municipal policy" requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original) (footnote omitted).

The Ninth Circuit recognizes four categories of "official municipal policy" sufficient to establish municipal liability under *Monell*: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) failure to adequately train employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999). A plaintiff must also establish the requisite causal link between this "policy" and the alleged constitutional deprivation. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008). The Supreme Court articulated the causation requirement as follows:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct casual link between the municipal action and the deprivation of federal rights.

1    *Bd. of Cnty. Comm'rs*, 520 U.S. at 404.  "Where a plaintiff claims that the

2    municipality has not directly inflicted an injury, but nonetheless has caused an

3    employee to do so, rigorous standards of culpability and causation must be applied

4    to ensure that the municipality is not held liable solely for the actions of its

5    employees."  *Id.* at 405.

6        Here, this Court finds Hawkins has failed to adequately plead *Monell*

7    liability.  While Hawkins is attempting to sue several Douglas and Chelan County

8    entities, he fails to provide any allegations linking his alleged constitutional

9    deprivation to some municipal policy or action.  His First Amended Complaint

10   contains the single assertion that that Defendants' actions were "in accordance with

11   the official policy of the Douglas County Sheriff's Department and the Chelan

12   County Sheriff's Department," but it remains otherwise unclear what "official

13   municipal policy" is at issue.  ECF No. 22 at 18.  Such a conclusory allegation is

14   insufficient to survive dismissal.  Accordingly, Douglas County, Chelan County,

15   and the municipal entities are dismissed.

16        **2.  Prosecuting Attorneys**

17        The Douglas County Defendants argue that the Douglas County Prosecuting

18   Attorney's Office Defendants are entitled to absolute immunity and should be

19   dismissed on this basis.  ECF No. 23 at 6-10.  In support, Defendants highlight that

20   there are no allegations within the First Amended Complaint that Steve Clem or

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 12

Does 19-25 acted outside of their prosecutorial role such that any of their conduct is unprotected by absolute immunity.  *Id.*  Hawkins does not respond to this argument.

Under federal law, "[p]rosecutors performing their official prosecutorial functions are entitled to absolute immunity against constitutional torts."  *Lacey*, 693 F.3d at 912.  "Immunity attaches to 'the nature of the function performed, not the identity of the actor who performed it."  *Id.*  The party asserting immunity "bears the burden of showing that immunity is justified for the function in question."  *Id.* (ellipses omitted).

"A prosecutor is entitled to absolute immunity from a civil action for damages when he or she performs a function that is 'intimately associated with the judicial phase of the criminal process.'"  *KRL v. Moore*, 384 F.3d 1105, 1110-11 (9th Cir. 2004) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  This includes initiating a prosecution and presenting the State's case, appearing at a probable cause hearing to support an application for a search warrant, and preparing and filing an arrest warrant.  *Id.*; *see also Lacey*, 693 F.3d at 912 ("Absolute immunity also protects those functions in which the prosecutor acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

1    On the other hand, absolute immunity "may not apply when a prosecutor is

2    not acting as 'an officer of the court,' but is instead engaged in other tasks, say

3    investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335,

4    342 (2009) (quoting *Imbler*, 424 U.S. at 431 n.33). Such unprotected activities

5    include giving advice to police during a criminal investigation, making statements

6    to the press, or acting as a complaining witness in support of a warrant application.

7    *Id.* at 343.

8    Here, even assuming Hawkins sufficiently alleged the necessary elements of

9    a malicious prosecution claim against the Douglas County prosecuting attorneys,[6]

10    they are absolutely immune from suit. Accepting the factual allegations of the

11    First Amended Complaint as true and drawing all reasonable inferences in

12    Hawkins' favor, this Court finds Defendants Steve Clem and Does 19-25 should be

13    dismissed. While the First Amended Complaint details the events leading to

14    Hawkins' arrest and the involvement of various deputies, Hawkins makes no

15    allegations as to Steve Clem, the other unnamed prosecuting attorneys, or the

16    

17    [6] To be clear, he did not. Other than the fact that these defendants may have

18    pursued charges against Hawkins, there are no allegations supporting the elements

19    of a malicious prosecution claim—namely, that Defendants pursued charges with

20    malice and without probable cause. *See Smith*, 640 F.3d at 938.

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 14

1    prosecutor's office more generally.  It merely asserts that Mr. Clem was employed

2    by the Douglas County Prosecuting Attorney and that the Does 19-25 "were at all

3    pertinent times employed by the Douglas County Prosecuting Attorney as deputy

4    prosecuting attorneys and are individuals who may be liable for malicious

5    prosecution of the Plaintiff in their investigative or administrative tasks, but are as

6    yet unknown."  ECF No. 22 at 3-4.  Besides this half-hearted, conclusory

7    allegation that some of the Douglas County prosecuting attorneys *may* be liable for

8    malicious prosecution in their investigative or administrative tasks, there are

9    otherwise no allegations in the First Amended Complaint that the prosecuting

10    attorneys acted outside their prosecutorial capacity, let alone allegations regarding

11    any conduct on the part of these Defendants.  *See Iqbal*, 556 U.S. at 678 ("[T]he

12    tenet that a court must accept as true all of the allegations contained in a complaint

13    is inapplicable to legal conclusions.").  While Hawkins maintains that discovery

14    will lead to greater specificity in the allegations against Defendants, Rule 8 "does

15    not unlock the doors of discovery for a plaintiff armed with nothing more than

16    conclusions."  *Id.* at 678-69.  Accordingly, Steve Clem and Does 19-25 are

17    dismissed.

18                    **3.  Sheriff's Deputies**

19           Both the Douglas and Chelan County Defendants argue that Hawkins has

20    failed to state a claim for malicious prosecution against the individual officers,

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 15

1    namely because of the existence of probable cause as alleged in the pleading.[7]

2    ECF Nos. 23 at 11-14; 24 at 9-11.  While Hawkins generally objects to dismissal,

3    he fails to argue that the First Amended Complaint demonstrates that probable

4    cause is lacking.  *See* ECF No. 25.

5         Here, this Court finds dismissal is proper for failure to state a claim.

6    Accepting the factual allegations within the First Amended Complaint as true and

7    drawing all reasonable inferences in Hawkins' favor, this Court finds Hawkins has

8    failed to sufficiently allege malice and lack of probable cause.  Hawkins' response

9    brief paints the narrative of a conspiracy between the sheriffs' deputies—including

10   Dale England, with whom Hawkins has a long-standing family feud—Morrison,

11   and the other England family members wherein Morrison and the Englands framed

12   Hawkins, and the deputies were aware but nonetheless helped pursue the arrest,

13

14   [7] While Defendants also argue that the officers are shielded from liability based on

15   the doctrine of prosecutorial immunity, "the presumption of independent

16   prosecutorial judgment in the charging decision is an evidentiary presumption

17   applicable at the summary judgment stage . . . it is not a pleading requirement to be

18   applied to a motion to dismiss."  *Galbraith v. County of Santa Clara*, 307 F.3d

19   1119, 1126 (9th Cir. 2002).  Accordingly, at this stage of the proceedings, this

20   Court declines to consider the doctrine of prosecutorial independence.

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 16

1   prosecution, and conviction of Hawkins.  However, the allegations within

2   Hawkins' First Amended Complaint do not go so far.

3       As it currently reads, the First Amended Complaint alleges, or at least

4   alludes to, the following: (1) Hawkins has a long-standing feud with his in-laws,

5   the Englands, and more recent issues with Bob Morrison and Charlie Meyers; (2)

6   someone—possibly Bob Morrison, Charlie Meyers, or Len England—planted farm

7   equipment that was reported as stolen on Hawkins' property; (3) a Douglas County

8   deputy found the missing sprayers on Hawkins' property after a tip from Len

9   England, and both Chelan and Douglas County deputies found the missing Kubota

10  tractor in Hawkins' possession; (4) following Hawkins' two arrests for the Kubota

11  tractor and the encounter with Hawkins' employee regarding the Landini tractor,

12  Douglas County Sheriff's Office deputies visited one of Hawkins' orchards and

13  inspected the tractors and other equipment; (5) Hawkins was charged with four

14  counts related to the stolen farm equipment and convicted on two; and (6) Douglas

15  County ultimately dismissed the charges with prejudice after Hawkins appealed

16  and was granted a new trial.

17      Importantly, the First Amended Complaint contains no allegations that the

18  Chelan or Douglas County sheriff's deputies were aware that Hawkins did not steal

19  the missing orchard equipment—thus destroying any probable cause—and

20  nonetheless helped cause the prosecution against Hawkins.  Quite the opposite, the

pleading demonstrates that the officers discovered Hawkins in possession of the stolen farm equipment, which allegations demonstrate the existence of probable cause rather than the lack thereof.[8]  And regarding the element of malice, while it is clear Hawkins has a long-standing dispute with his in-laws, including Deputy Dale England, as well as with other members of the orchardist community, these allegations are insufficient to demonstrate that the conduct of Chelan and Douglas County officers was motivated by malice.  Accordingly, the individually-named Defendants and remaining Doe Defendants are dismissed.

### C. Leave to Amend

Even when a complaint fails to state a claim for relief, "[d]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by an amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The standard for granting leave to amend is generous. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether

---

[8] It is unclear based on the allegations in the First Amended Complaint why Hawkins was charged with possession of the stolen Landini tractor.

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 18

1    the plaintiff has previously amended the complaint. *United States v. Corinthian*

2    *Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

3        This Court finds amendment is, once again, proper.  First, the Court finds no

4    indication of bad faith or undue delay.  Second, this Court finds no prejudice to the

5    opposing party at this early stage in the proceedings.  Third, Hawkins has amended

6    his pleading only once.  Finally, this Court finds amendment may not be futile. The

7    Court can conceive of additional allegations that could provide support for

8    Hawkins' malicious prosecution claim otherwise dismissed by this Order.

9    Accordingly, because the factors weigh in favor of amendment, Hawkins request

10   for leave to amend his First Amended Complaint, ECF No. 25 at 13, is granted.

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 19

1      **ACCORDINGLY, IT IS ORDERED:**

2      1.  Defendant Douglas County's 12(b) Motion to Dismiss Amended

3   Complaint (ECF No. 23) is **GRANTED**.

4      2.  Chelan County Defendants' Motion to Dismiss Plaintiff's First Amended

5   Complaint (ECF No. 24) is **GRANTED**.

6      3.  Plaintiff's Complaint is **DISMISSED without prejudice**.  Plaintiff is

7   **GRANTED** leave to file a second amended complaint within thirty (30) days of

8   the entry of this order.

9      4.  The District Court Executive is directed to enter this Order and provide

10  copies to counsel.

11     **DATED** May 17, 2016.

12
                                        
13                                      THOMAS O. RICE
                                Chief United States District Judge
14

15

16

17

18

19

20

SECOND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS ~ 20