UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

EDWIN TROY HAWKINS,

                Plaintiff,

    v.

DOUGLAS COUNTY, a municipal
corporation; CHELAN COUNTY, a
municipal corporation; DALE
ENGLAND; RANDY LAKE; BO
ALLEN; DEAN SCHLAMAN; BILL
BLACK; JOHN and JANE DOE
DEPUTIES NO. 3–8 of the
DOUGLAS COUNTY SHERIFF'S
DEPARTMENT; and JOHN and
JANE DOE NO. 9–14 DEPUTIES of
the CHELAN COUNTY SHERIFF'S
DEPARTMENT,

                Defendants.

NO. 2:15-CV-0283-TOR

ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

BEFORE THE COURT are Defendants Chelan County and Douglas

County's Motions for Summary Judgment. ECF Nos. 47; 51. This matter was

submitted for consideration without oral argument. The Court has reviewed the

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ~ 1

record and files herein, and is fully informed.  For the reasons discussed below, Defendants' Motions for Summary Judgment (ECF Nos. 47; 51) are **GRANTED**.

## BACKGROUND

This action arises out of the underlying criminal conviction of Plaintiff Edwin Troy Hawkins.  Defendants previously moved to dismiss all federal and state law claims in Plaintiff's original Complaint, which the Court granted excluding the malicious prosecution claims.  ECF No. 21.  Plaintiff then filed a First Amended Complaint and Defendants moved to dismiss.  ECF Nos. 22; 23; 24.  The Court granted Defendants' motions and allowed Plaintiff's request for leave to amend.  ECF No. 33.

In his Second Amended Complaint, Plaintiff asserts, pursuant to 42 U.S.C. § 1983, the Chelan and Douglas County entities and officers maliciously pursued charges and a conviction against him in violation of his Fourth and Fourteenth Amendment rights.  ECF No. 35 at 20.  The Court granted the parties' Stipulated Motion to Dismiss Defendants Steven M. Clem and John Does 15–25 with the Douglas County Deputy Prosecuting Attorney's Office.  ECF No. 41.  Plaintiff never timely identified the John and Jane Doe Defendants, ECF No. 46 at 2, and therefore, they are dismissed.  In the instant motions, the remaining Chelan County defendants and Douglas County defendants move for summary judgment with prejudice on all claims.  ECF Nos. 47; 51.

**FACTS**

The following are the undisputed facts unless otherwise noted.[1]  Hawkins is an orchardist in Eastern Washington.  ECF No. 59 at ¶ 3.  In early 2006, Bob Morrison, manager of Beebe River Orchard, offered to have Hawkins lease the orchard.  ECF No. 35 at ¶ 2.3.  Hawkins had several agents investigate the equipment on the orchard and ultimately declined the lease offer.  *Id.* at ¶¶ 2.4–2.5. As a result, Hawkins contends that Morrison and Charlie Myers, the orchard's irrigator, lost their full-time employment.  *Id.* at ¶ 2.5.

Later in the spring of 2006, Morrison reported to the Douglas County Sheriff's Office that two sprayers, a Kubota tractor, and a Landini tractor were missing.  ECF Nos. 35 at ¶ 2.6; 59 at ¶ 9.  Hawkins asserts that Morrison testified at the criminal trial that he received a call from Len England, who said he knew

---

[1]  Defendants Chelan County contend that Plaintiff failed to comply with Federal Rule of Civil Procedure 56, Local Rule 56.1, and Local Rule 7.1. Defendants request that the Court find all of Defendants' facts undisputed.  ECF Nos. 66 at 2–3; 67 at 2.  The Court declines to make this finding where Plaintiff filed a Statement of Facts asserting his own material facts with evidence of depositions and affidavits, even if it does not explicitly dispute each of Defendants' statements.  *See* ECF No. 59.

where the missing sprayers were and had photographs. ECF Nos. 35 at ¶ 2.7; 59 at ¶ 11. Hawkins has a long-standing feud with his in-laws, including Len, Doug, and Dale England.[2] ECF No. 35 at ¶ 2.2. Morrison reported to the Douglas County Sherriff's Office that the missing orchard sprayers were located on property Hawkins leased from Sandcastle Orchard and provided the photographs taken by Len England. ECF Nos. 35 at ¶ 2.7; 52 at ¶¶ 7–8; 59 at ¶ 12. The parties dispute whether Bill Black, an officer with the Douglas County Sheriff's Office, knew that Len England was Hawkins' uncle. ECF Nos. 52 at ¶ 9; 59 at ¶¶ 12–13. Officer Black visited Sandcastle Orchard, along with Charlie Myers. ECF No. 35 at ¶ 2.8. The sprayers were eventually located on property Hawkins' leased. ECF Nos. 52 at ¶ 20; 59 at ¶ 20.

After answering Deputy Black's questions, Hawkins visited the neighbors of Sandcastle Orchard, Don and Gloria Bailey. ECF No. 35 at ¶ 2.9. Hawkins states that Ms. Bailey testified at trial that several days before the sprayers were found,

---

[2]     Dale England, a Chelan County Sheriff's Deputy, is named in this suit and Hawkins alleges that he contributed to the investigation of the stolen farm equipment. ECF No. 59 at ¶ 32. Deputy England asserts that he took steps to limit his involvement in the investigation due to the familial relationship. ECF Nos. 48 at ¶¶ 5–7; 52 at ¶ 10.

she witnessed a blue Ford pickup—Morrison drove a blue Ford Ranger—with a loaded trailer drive on to the Sandcastle Orchard property and then drive away with an empty trailer. *Id.*; 59 at ¶¶ 9, 17. At deposition, Ms. Bailey testified that two police officers questioned her about the equipment. ECF Nos. 59 at ¶ 18; 60-7 at 4 (Ex. G). Deputy Bo Allen of the Douglas County Sheriff's Office testified he did not follow up with Ms. Bailey's statement. ECF No. 60-6 at 4 (Ex. F).

In late October 2006, Deputy Randy Lake of the Chelan County Sheriff's Office visited Hawkins' home and inspected his farm equipment. Deputy Lake did not find any signs of the missing Kubota and Landini tractors. ECF Nos. 35 at ¶ 2.11; 48 at ¶ 22; 59 at ¶ 21. The day after this search, Hawkins asserts that tools, equipment, and equipment records were stolen from one of Hawkins' shops. ECF No. 35 at ¶ 2.12; 59 at ¶ 22.

Subsequently, Hawkins brought his Kubota tractor to East Wenatchee for repair. ECF No. 35 at ¶ 2.17. The mechanics noticed that the serial number on the tractor had been ground off and the identification plate was missing. *Id.* The mechanics determined that this Kubota tractor was one of the pieces of equipment previously reported missing and contacted the police. *Id.*; 52 at ¶ 15.

On June 8, 2007, Hawkins was arrested for possession of stolen property when he went to pick up the tractor from the mechanics. ECF No. 35 at ¶ 2.18. After he was released on bail, Hawkins returned to the mechanic to pick up the

tractor. *Id.* While driving home with the tractor, Hawkins was pulled over by a Chelan County Sheriff's deputy who had been in communication with the Douglas County Sheriff's Office. *Id.* There was confusion over whether this tractor was the missing tractor. *Id.* Ultimately, deputies from both Douglas and Chelan County, including Deputy Lake, took pictures of the tractor and then helped Hawkins lock the tractor in his shed. *Id.*; 48 at ¶ 22. On June 11, 2007, several Douglas and Chelan County deputies arrived at Hawkins' home and arrested him for possession of stolen property, the stolen property being the Kubota tractor Hawkins brought home three days earlier. ECF No. 35 at ¶ 2.19.

In September 2007, Hawkins asserts that his employee was twice pulled over by a Douglas County Sheriff's deputy for transporting the allegedly stolen Landini tractor and that Deputy England was present for the second stop. *Id.* at ¶ 2.24. Hawkins contends that Deputy Dean Schlaman of the Douglas County Sheriff's Office stopped a truck and the Landini tractor on the highway based upon a call by Deputy England. ECF No. 53-1 at 65 (Ex. D); 52 at ¶ 38. Hawkins states that Deputy Schlaman then waited for an hour and fifteen minutes for the arrival of Deputy England to inspect the tractor, and they found no evidence that it was stolen. ECF No. 53-1 at 65–66 (Ex. D). Additionally, Hawkins claims that Deputy England, along with Deputy Allen, threatened one of Hawkins' employees with deportation if he did not tell them who stole the tractors. ECF No. 35 at ¶ 2.24. In

October 2007, Deputy Schlaman drafted a search warrant for the Landini tractor, which was then located on Hawkins' property. ECF No. 52 at ¶¶ 21–22. Hawkins also alleges that Deputy Schlaman trespassed on his property and failed to disclose he was a police officer. ECF Nos. 35 at ¶ 2.25; 52 at ¶ 38; 53-1 at 65 (Ex. D).

Hawkins was ultimately charged with four crimes related to the stolen farm equipment: one count of first degree possession of stolen property for the sprayers; one count of first degree possession of stolen property for the Landini tractor; one count of first degree attempted possession of stolen property based on Hawkins' attempt to pick up the Kubota tractor from the mechanic; and one count of first degree possession of stolen property based on when Hawkins obtained possession of the Kubota tractor from the mechanic. ECF No. 35 at ¶ 2.36.

Hawkins was convicted on the two counts related to the Kubota tractor. *Id.* at ¶ 2.37; 52 at ¶ 26. Hawkins appealed the convictions, and while the appeal was pending, successfully moved the trial court for a new trial based on newly discovered evidence. ECF No. 35 at ¶ 2.38. The state appealed the trial court's grant of a new trial, and the Washington State Supreme Court ultimately ruled in Hawkins' favor. *Id.* On December 19, 2014, the Douglas County Superior Court entered a stipulated order of dismissal with prejudice as to the charges against Hawkins. *Id.* at ¶ 2.39.

On September 16, 2015, Hawkins initiated this case. ECF No. 1 at ¶ 2.

# DISCUSSION

## I.  Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The moving party bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *Anderson*, 477 U.S. at 256.

In ruling on a motion for summary judgment, the court views the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  There must be evidence on which a jury could reasonably find for the plaintiff and a "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.

//

## II.    Under Color of Law

Under 42 U.S.C. § 1983, a cause of action may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws,' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). "Under color of law" requires a showing of "personal participation in the alleged rights deprivation," not merely membership in a group without showing individual participation in the unlawful conduct. *Jones v. Williams*, 297 F.3d 930, 934–35 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)). "A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff complains.'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (brackets and emphasis omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

### A. Randy Lake

Chelan County Defendants assert that Randy Lake's involvement in the case was limited to a consensual search of Mr. Hawkins' property where Deputy Lake found no evidence of stolen equipment. ECF Nos. 47 at 7; 35 at ¶ 2.11; 48 at ¶ 22; 59 at ¶ 21. Almost a year later, Deputy Lake inspected a Kubota tractor that had

been reported stolen by the mechanics and helped Hawkins take pictures of the tractor. ECF Nos. 35 at ¶ 2.18; 48 at ¶ 22. Therefore, Chelan County Defendants argue that Hawkins' malicious prosecution claim cannot be maintained against Deputy Lake. ECF No. 47 at 7. Plaintiff provides no further evidence of involvement nor asserts any arguments contradicting Chelan County Defendants' claims that there was no direct participation by Deputy Lake. *See* ECF Nos. 57; 66 at 5.

The Court finds that Deputy Lake's limited participation in searching Hawkins' property, which led to no information or charges, and one instance of inspecting a tractor and then leaving it in the possession of Hawkins is insufficient to establish personal participation in the alleged deprivation of Hawkins' constitutional rights. Therefore, the Court concludes there are no genuine issues of material fact, Deputy Lake did not personally participate in the alleged deprivation and the Court grants summary judgment for Deputy Lake.

### B. Dale England

Chelan County Defendants contend that Plaintiff failed to allege facts establishing that Dale England participated in the alleged constitutional violations. ECF No. 47 at 8–9. In response, Plaintiff provided the Declaration of Michael T. Harum, former Sheriff of Chelan County. ECF No. 58 at ¶ 2. Mr. Harum stated that Deputy England was not assigned to the case, but involved himself in

significant steps of the investigation.  *Id.* at ¶ 6.  He stated that Deputy England's declaration of limited involvement and deliberate separation from the investigation "are untrue statements."  *Id.* at ¶ 7.

While Chelan County Defendants argue that the Declaration contains no disputed material facts, the Declaration is enough to establish a genuine issue of material fact regarding whether Deputy England personally participated in the alleged constitutional violations.  *See* ECF No. 66 at 8.  Significantly, Plaintiff offered evidence of Deputy England's involvement in the investigation that went beyond his claimed limited participation.

Since Plaintiff has raised a genuine issue of material fact regarding Deputy England's personal participation in the alleged constitutional violations, the Court must proceed to analyze the claimed violations.

### III.    Malicious Prosecution

"To maintain a § 1983 action for malicious prosecution, a plaintiff must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her a specific constitutional right." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (internal quotations and brackets omitted).  The claim also requires "'the institution of criminal proceedings against another who is not guilty of the offense charged' and that 'the proceedings have terminated in favor of the accused.'"  *Lacey v. Maricopa Cty.*, 693 F.3d

896, 919 (9th Cir. 2012) (quoting Restatement (Second) of Torts § 653

(1977)). "A criminal defendant may maintain a malicious prosecution claim not

only against prosecutors but also against others—including police officers and

investigators—who wrongfully caused his prosecution." *Smith*, 640 F.3d at 938.

Both parties note that under Washington state law, the plaintiff must allege

and prove:

> (1) that the prosecution claimed to have been malicious was instituted
> or continued by defendant; (2) that there was want of probable cause
> for the institution or continuation of the prosecution; (3) that the
> proceedings were instituted or continued through malice; (4) that the
> proceedings terminated on the merits in favor of the plaintiff, or were
> abandoned; and (5) that the plaintiff suffered injury or damage as a
> result of the prosecution.

*Gem Trading Co., Inc. v. Cudahy Corp.*, 92 Wash.2d 956, 962–63 (1979)

(en banc) (citing *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wash.2d 485,

497 (1942); *see* ECF Nos. 47 at 10–11; 57 at 5.

"In general, a claim of malicious prosecution is not cognizable under § 1983

if process is available within the state judicial systems to provide a remedy,

although … an exception exists … when a malicious prosecution is conducted with

the intent to … subject a person to a denial of constitutional rights." *Lacey v.*

*Maricopa Cty.*, 693 F.3d 896, 919 (9th Cir. 2012) (internal quotations and citation

omitted).

//

## A. Dale England

Chelan County Defendants allege that Plaintiff cannot prove all the necessary elements to show he was maliciously prosecuted. ECF No. 47 at 11. First, Chelan County Defendants argue that the Douglas County prosecutor independently determined probable cause to pursue the prosecution and nothing in the record indicates that the prosecutor relied on Deputy England in making his charging decision. *Id.*; 66 at 9. Yet, Plaintiff asserts that through violation of clear rules and policies prohibiting conflict of interest, law enforcement deliberately steered an investigation toward a preselected suspect. ECF No. 57 at 14.

Plaintiff contends that Deputy England directed the investigation of the Douglas County Sheriff's Office. *Id.* at 14–15. Mr. Harum declared that Deputy England directly involved himself in the investigation in contravention of the written policy that an officer cannot participate in an investigation of a family member. ECF No. 58 at ¶¶ 8–9. Plaintiff also cites that Deputy England allegedly called Deputy Schlaman to stop a truck thought to be driven by Hawkins and to inspect a tractor. Deputy Schlaman then allegedly waited for Deputy England to arrive to also inspect the tractor. ECF Nos. 57 at 14–15; 53-1 at 65–66 (Ex. D). Deputy Schlaman later supplied an affidavit for a search warrant, which then lead to the search of Hawkins' property and discovery of the Landini tractor. ECF No. 53-2 at 19–22 (Ex. I.), 28 (Ex. K).

Even assuming that there is a genuine question of fact as to whether the claimed malicious prosecution was instituted or continued by Deputy England, Plaintiff fails to show that the prosecution lacked probable cause. "[P]robable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009) (citation omitted). Here, the officers discovered Hawkins in possession of the stolen farm equipment, categorically demonstrating the existence of probable cause. Plaintiff cites that if there is an issue of fact regarding the existence of probable cause, then it must be determined by the jury. ECF No. 57 at 6 (quoting *Bender v. City of Seattle*, 99 Wash.2d 582, 594 (1983) (citation omitted)). Yet, Plaintiff fails to provide any evidence to show a genuine dispute as to any material fact or any argument that there was a lack of probable cause. At most, Plaintiff articulates "suspicion" that evidence was planted or there was a conspiracy. Suspicion does not defeat summary judgment.

Therefore, the Court need not consider the remaining elements as the prosecution proceeded with probable cause. The Court grants summary judgment in favor of Dale England as there is no genuine issue of material fact regarding the malicious prosecution claim.

The Court need not address qualified immunity as both Randy Lake and Dale England are granted summary judgment. *See* ECF No. 47 at 13.

**B. Bo Allen**

Douglas County Defendants assert that the Douglas County prosecuting attorney's office made an independent decision to file charges and try Hawkins. ECF No. 51 at 14. Douglas County Defendants also contend that the deputies are protected by the existence of probable cause, which is an absolute defense. *Id.* at 13–14.

Plaintiff alleges that Officer Allen deliberately chose to ignore exculpatory evidence and thus suppressed evidence vital to Hawkins' defense. ECF No. 57 at 15. After speaking with Ms. Bailey, Officer Allen failed to further pursue the lead that a suspicious Ford truck was dropping off equipment on Hawkins' property. In deposition, Officer Allen stated, "I figured it was probably important enough, I just didn't [follow up]," nor did he ask anyone else to investigate the incident. ECF No. 60-6 at 4 (Ex. F).

It is disputable whether the prosecutors relied in part on Officer Allen's investigation or lack of investigation in charging Hawkins, but there is no evidence that there was a lack of probable cause. The tractors were found on Plaintiff's leased property and he does not offer any evidence, other than speculation, that probable cause was lacking, even if Officer Allen failed to investigate further.

Accordingly, the Court grants summary judgment in favor of Bo Allen as probable cause is a complete bar to the claim of malicious prosecution.

## C. Bill Black

Plaintiff contends that Officer Bill Black knew the photographs given by Bob Morrison were taken by Len England. ECF No. 57 at 16. Officer Black also visited Hawkins' property and found no evidence, but Plaintiff does not assert that this in any way affected the prosecutor's decision to pursue Hawkins. ECF No. 35 at ¶ 2.8. Yet, even if Officer Black's failure to authenticate the photographs affected the prosecution, Plaintiff fails to offer any evidence or arguments that probable cause was lacking.

Therefore, the Court grants summary judgment in favor of Bill Black as there are no genuine issues of material fact regarding probable cause.

## D. Dean Schlaman

It is not contested that Deputy Schlaman investigated Hawkins and eventually found the tractor on Hawkins' property according to a search warrant. ECF No. 53-2 at 25–26 (Ex. J), 28–29 (Ex. K). Additionally, Plaintiff contends that Deputy Schlaman stopped a truck and the Landini tractor on the highway based upon a call by Deputy England, but found no evidence. ECF Nos. 52 at ¶ 38; 53-1 at 65–66 (Ex. D). Plaintiff also alleges that Deputy Schlaman trespassed on his property and failed to disclose he was a police officer. ECF Nos. 35 at ¶ 2.25; 52 at ¶ 38. These latter two allegations are irrelevant as there is no evidence

that the prosecutors relied upon these searches where Deputy Schlaman found no evidence of any stolen items.

While the prosecutors did rely on Deputy Schlaman's search warrant and the stolen tractor found on Plaintiff's property, there is no evidence that probable cause was lacking. Indeed, Deputy Schlaman provided the prosecutors with probable cause by finding a stolen tractor on Plaintiff's property. Plaintiff offers no evidence, not even a scintilla, to overcome this finding of probable cause.

Accordingly, the Court grants summary judgment in favor of Dean Schlaman as there are no genuine issues of material fact that the prosecution proceeded with probable caused based on the information and evidence provided by Deputy Schlaman's investigation.

## IV.  *Monell* Claims

The Supreme Court has held that local governments are "persons" who may be subject to suits under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). A municipality may only be held liable for constitutional violations resulting from actions undertaken pursuant to an "official municipal policy." *Id*. at 691. As the Supreme Court articulated in *Monell*, the purpose of the "official municipal policy" requirement is to prevent municipalities from being held vicariously liable for unconstitutional acts of their employees under the doctrine of respondeat superior. *Id*.; *see also Bd. of Cnty. Comm'rs of Bryan City., Okl. v.*

*Brown*, 520 U.S. 397, 403 (1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–79 (1986). Thus, the "official municipal policy" requirement "distinguish[es] acts of the *municipality* from acts of *employees* of the municipality, and thereby make[s] clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original).

The Ninth Circuit recognizes four categories of "official municipal policy" sufficient to establish municipal liability under *Monell*: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) failure to adequately train employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235–40 (9th Cir. 1999). A plaintiff must also establish the requisite causal link between this "policy" and the alleged constitutional deprivation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of Cnty. Comm'rs*, 520 U.S. at 405.

**A. Chelan County**

Chelan County asserts that its municipal liability has not been established.

ECF No. 66 at 4. Plaintiff emphasizes the Declaration of Mr. Harum, in which Mr. Harum asserted that there was a written policy that "an officer of the Chelan County Sheriff's Department cannot investigate or be a part of an investigation involving a family member. This written policy was implicated by the negative family relationship between the Englands and the Hawkins." ECF No. 58 at ¶ 8. Mr. Harum stated that this policy is meant to prevent conflicts of interest and is essential to the ethical behavior of law enforcement personnel. *Id.* at ¶ 9. The Englands were aware of this policy and Mr. Harum declared that Deputy England violated this policy repeatedly with respect to the investigation of Hawkins. *Id.* at ¶ 10. Additionally, Mr. Harum noted that he believed Deputy England was a suspect in the investigation, specifically for entering Hawkins' shop and removing items. *Id.* at ¶ 11. Deputy England's career also "involved a record of knowingly lying in an official capacity," leading to his termination. *Id.* at ¶ 15. Therefore, there is evidence of a clear written policy prohibiting Deputy England from participating in the investigation of Hawkins.

This official policy illustrates that Chelan County cannot be held liable under the municipal policy theory because Chelan County attempted to prevent investigation by family members through a clear written policy. The official policy is to prevent conflicts of interest and Deputy England allegedly contravened this policy, meaning that the municipality is not responsible for his actions because

they violate its policy.  *See Pembaur*, 475 U.S. at 479–80.  There are no allegations or evidence that Chelan County's policy is unconstitutional or led to the alleged constitutional violation, but rather it was created in order to prevent such conflicts of interest.  Chelan County cannot be held liable for the alleged unconstitutional actions of Deputy England when it had a clear policy to prevent his actions.  To hold otherwise would mean Chelan County is vicariously liable for the actions of Deputy England.

Plaintiff provides no evidence or arguments on any other theories of municipal liability, such as failure to train or ratification by a final policymaker. *See* ECF No. 57.  Accordingly, the Court grants Chelan County's Motion for Summary Judgment and finds that Chelan County cannot be held liable under a *Monell* claim.

**B. Douglas County**

Douglas County argues that Plaintiff cannot establish an inadequate policy or procedure, or evidence of failure to train under *Monell* liability.  ECF No. 51 at 6–7.  Plaintiff asserts that Douglas County published procedural standards applying to the behavior and activity of law enforcement, prohibiting officers from being involved in investigations of family members.  ECF Nos. 57 at 13; 60-4 at 3 (Ex. D).  Douglas County Defendants emphasize that Plaintiff provides no evidence that the policy is constitutionally invalid or causally related to any constitutional

deprivation. ECF No. 70 at 2–3. Plaintiff also did not address a failure to train claim. *See* ECF No. 57.

Therefore, the Court finds that Plaintiff fails to establish an official municipal policy that is invalid or lead to an alleged constitutional violation. As discussed above in relation to the *Monell* claim against Chelan County, there is no evidence that the official policy to prevent such a conflict of interest was unconstitutional or reveals that the municipality is actually responsible for the alleged constitutional violation. Accordingly, the Court grants Douglas County's Motion for Summary Judgment in regards to Plaintiff's *Monell* claim.

## V.    Failure to Disclose Claim to Bankruptcy Court

The Court need not address the Defendants' argument that Plaintiff is judicially estopped from pursuing his claim because he failed to disclose it to the bankruptcy court. ECF Nos. 47 at 15; 51 at 15. The Court has already granted Defendants' Motions for Summary Judgment and therefore this claim is moot.

## VI.    Leave to Amend

Defendants request that all claims be dismissed with prejudice and without any further opportunity to amend. ECF Nos. 47 at 2; 51 at 2. Under Federal Rule of Civil Procedure 15(a)(2), "[T]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether leave to amend is appropriate, a court must consider "bad faith, undue delay, prejudice to the

opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

Here, a balancing of the factors weighs against granting leave to amend. Plaintiff did not act in bad faith or unduly delay, but he has not sought leave to amend. While the Court has previously found no prejudice in amending at the early stage of a motion to dismiss, that determination was over a year ago. *See* ECF No. 1. The case has now continued two years since removal from state court. Plaintiff has had two opportunities to amend his pleading. The Court finds that amendment would be futile where there is no evidence of a lack of probable cause or an unconstitutional policy creating *Monell* liability. Discovery is now closed and Plaintiff would be unable to disclose further evidence to prove his claims. *See* ECF No. 46 at 4. If granted leave to amend, Plaintiff would be unable to further assert a genuine issue of material fact and the Court concludes that amendment is futile. Accordingly, the Court grants the Motions for Summary Judgment with prejudice.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Chelan County Defendants' Motion for Summary Judgment (ECF No. 47) is **GRANTED**.

2. Douglas County Defendants' Motion for Summary Judgment (ECF No. 51) is **GRANTED**.

3. Plaintiff never timely identified the remaining John and Jane Doe Defendants, ECF No. 46 at 2, and therefore, they are **DISMISSED**.

4. Plaintiff's claims are **DISMISSED with prejudice**.

5. The remaining motions, deadlines, hearings and trial date are **VACATED** as moot.

The District Court Executive is directed to enter this Order, enter Judgment in favor of Defendants, furnish copies to counsel, and **CLOSE** the file. Each party to bear its own costs and expenses.

**DATED** November 27, 2017.



THOMAS O. RICE
Chief United States District Judge